UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| RAJEEV A. KHAN and TASNIM A. KHAN, | Civ. No.: 12-117 |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| BANK OF AMERICA HOME LOAN SERVICING L.P. and REAL TIME RESOLUTIONS, | |
| Defendants. | |

WOLFSON, United States District Judge:

This matter having been opened to the Court sua sponte, raising the questions of its jurisdiction over pro se Plaintiffs' Rajeev A. and Tasnim A. Khan ("Plaintiffs'") remaining state law claims and whether Plaintiffs' suit is barred by the Younger abstention doctrine; and the Court finding:

1. On May 10, 2012, I issued a letter order directing the parties to brief whether this Court has diversity jurisdiction over this matter. Plaintiffs initially filed a complaint in state court alleging a Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") claim as well as several state law claims under New York law. Once the case was removed, Plaintiffs filed an amended complaint that appeared to remove the TILA claim. After the Court denied Plaintiffs' motion to remand[1], holding that the Court had

---

[1] Plaintiffs have moved for reconsideration of the opinion and order denying their motion to remand. Because I dismiss the suit for reasons explained herein, this motion is now moot. By the same token, Defendant Real Time Resolutions, Inc.'s proposed motion to dismiss Plaintiffs' Amended Complaint is also moot.

federal question jurisdiction over the initially-filed complaint based on the then-present TILA claim, the Court directed Plaintiffs to clarify whether they intended to pursue a TILA claim through their amended complaint. Furthermore, the Court instructed the parties that, if the plaintiffs did not so intend, the Court would consider whether it has diversity under 28 U.S.C. § 1332 over the state law claims asserted in the amended complaint, or whether it would exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Thereafter, Plaintiffs notified the Court that they no longer intend to pursue a TILA claim and the Court ordered the parties to submit supplemental briefing and certifications relating to the question of diversity jurisdiction.

2. Having received the parties' supplemental submissions, the Court concludes that there is diversity jurisdiction over the remaining state law claims. To establish diversity jurisdiction under 28 U.S.C. § 1332(a), there must be complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." Packard v. Provident Nat. Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).

3. With respect to diversity of citizenship, there is complete diversity amongst the parties. Plaintiffs are residents and citizens of New York state. See Khan Afft. dated Mar. 19, 2012 at ¶ 2. Defendant Real Time Resolutions ("Real Time") is incorporated in Texas and has its principal place of business in that state. See Wolf Cert., ¶ 3. Bank of America Home Loan Servicing L.P. ("BOA") is a national banking

association chartered by the Comptroller of the Currency of the U.S. Treasury with a main office located in North Carolina. See Stanford Cert., ¶¶ 3-4. As a national bank, its citizenship for diversity purposes is determined by reference to the main office designated in its articles of incorporation. Wachovia Bank v. Schmidt, 546 U.S. 303, 319 (2006). See also Abulkhair v. Citibank and Assoc., 434 Fed.Appx. 58, 60 (3d Cir. 2011) ("[A] national banking association is considered a citizen of the State designated in its articles of association as its main office.") (quoting same). Accordingly, with each party being a citizen of different states, complete diversity exists.

4. With regard to amount in controversy, a slightly more in depth analysis is required. While the parties agree that the amount in controversy exceeds $75,000, the Court must independently verify its jurisdiction. See FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir.1996) (holding that courts have an independent obligation to ensure that federal jurisdiction is present). Plaintiffs' amended complaint asserts claims under New Jersey state law: to wit, a New Jersey Consumer Fraud Act claim, N.J.S.A. 56:8-1, et seq. ("NJCFA")[2], along with common law fraud and unconscionability claims also under New Jersey law. In this complaint, Plaintiffs seek monetary damages totaling over $3,000,000, and further seek to have

---

[2] To be clear, Plaintiffs assert a New Jersey "Deceptive Practices Act" claim, however, in light of Plaintiffs' pro se status, the Court construes this claim as asserting the closely analogous New Jersey Consumer Fraud Act claim. See Suber v. Chrysler Corp., 104 F.3d 578, 586 (1997) ("The NJCFA allows private plaintiffs to bring suit if they are harmed by an unconscionable commercial practice.") (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 647 A.2d 454, 460-61 (1994)). See Am.Compl., ¶ 28 ("The plaintiffs are the victims of New Jersey Consumer Fraud Act ....").

their first mortgage and home equity line of credit declared null and void.  The value of the first mortgage is alleged to be $276,800.00, and the home equity line of credit $34,412.95.[3]  Finally, Plaintiffs seeks punitive damages.  Each of the Plaintiffs' claims relate to a New Jersey property they own—478 Trivoli Court, Marlboro, NJ 07751—that is currently in foreclosure in state court.  See Compl., ¶ 26.[4]

5.  In determining the amount in controversy requirement, it is appropriate to consider the value of the challenged mortgage transactions.  Accord Stonebridge Bank v. Nita Properties, LLC, Civil No. 09-5145 (RBK/JS), 2011 WL 380759 (D.N.J. Jan. 31, 2011) (considering value of commercial mortgage in determining amount in controversy).  Cf. Clottey v. Scolpino, No. Civ. A. 11-3065 2011 WL 4343476, (D.N.J. Sept. 14, 2011) ("The ultimate determination regarding the amount in controversy requires a 'reasonable reading of the value of the rights being litigated.") (quoting Angus v. Shiley, Inc., 989 F.2d 142, 146 (3d Cir. 1993)).  Here, Plaintiffs seek to rescind their $276,800.00 first mortgage, and their $34,412.95 home equity line of credit.

---

[3]  Plaintiffs sought rescission of these mortgages in their initial complaint filed in state court as well.  They, further, did not seek any specified monetary damages.  In addition, the Court notes, Plaintiffs filed a non-pleading document after the amended complaint was filed indicating that they now seek $550,000 in damages.  The Court need not consider this document as reference to the complaint is sufficient to determine that the amount in controversy requirement is met here.

[4]  This fact is alleged in Plaintiffs' initial complaint, and it is the facts at the time of the initiation of the case that control in a diversity jurisdiction analysis. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.") (quoting Mollan v. Torrance, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)).

6. Although one court has held that claims seeking equitable rescission should not be factored into the amount-in-controversy calculus because a plaintiff seeking rescission does not obtain any cash-in-pocket benefit, see Racher v. GMAC Mortgage Corp. of Pennsylvania, Civ. No. 95-4588, 1996 WL 276351, *4 (D.N.J. May 8, 1996), that case is distinguishable. For one, the court in that case expressed skepticism that the plaintiff was seeking rescission of the entire agreement as opposed to mere disgorgement of certain mortgage insurance overpayments. Id. at *3-5. I see no basis for such skepticism here. In addition, that decision appears to follow the "plaintiff-viewpoint rule," which reasons that "federal courts should look only to the benefit of the action to the plaintiff ...." and not those that would inure to the defendant in calculating the amount in controversy. Wright, et al., 14AA Fed. Prac. & Proc. Juris. § 3703 (4th ed.). Under this rationale, it is inappropriate for courts to look to the amount a defendant stands to lose in an injunctive relief case or rescission case. While the plaintiff-viewpoint rule rationale has some support in the case law, it is not the majority view; the majority view is that the value of the object of the litigation may factor into the amount in controversy analysis in equitable relief cases. Id. (collecting cases). See id.[5] Moreover, taking into account the value of the mortgages makes sense

---

[5] See e.g., McNair v. Synapse Group, Inc., No. 06-5072, 2009 WL 3754183, *2 (D.N.J. Nov. 5, 2009); ("In the Third Circuit, for actions seeking an injunction, it is settled that the amount in controversy is measured by the value of the right sought to be protected by the equitable relief.") (internal quotation marks omitted) (quoting In re Corestates Trust Fee Litig., 39 F.3d 61, 65 (3d Cir. 1994)); GWR Medical, Inc. v. Baez, Civil No. 07-1103, 2008 WL 698995 (E.D. Pa. 2008) (relying on value of declaratory judgment, inter alia, to calculate amount in controversy requirement).

5

here where Plaintiffs could potentially avoid liability on the underlying note if the mortgages were declared null and void.

7. As the combined mortgage amounts well exceed the statutory threshold, I conclude that the amount in controversy is met and this Court has diversity jurisdiction over Plaintiffs' state law claims.[6] Accordingly, as original jurisdiction exists, the Court may not engage in a supplemental jurisdiction analysis. See Shah v. Hyatt Corp., 425 Fed.Appx. 121 (3d Cir. 2011).

8. Having concluded that the Court has diversity jurisdiction over this suit, the Court must now address whether the Younger abstention doctrine precludes this Court from exercising its jurisdiction in light of the pending state-court foreclosure matter relating to the mortgages at issue in this case.[7] Courts in this circuit raise, sua sponte, the question of whether Younger abstention applies when a state foreclosure action is still pending. See e.g., Gray v. Pagano, 287 Fed.Appx. 155, 157-58 (3d Cir. 2008); Downey v. Perrault, No.09-1018, 2009 WL 3030051, *1 (D.N.J. Sept. 15, 2009). As explained by the Third Circuit in Gray v. Pagano,

---

[6]   This analysis likewise applies to Plaintiffs' initial complaint allegations, which were based on New York common law and did not include a specified amount of damages. See Gurney's Inn Resort & Spa Ltd. v. Benjamin, 743 F.Supp.2d 117, 124 n.4 (E.D.N.Y. 2010) (stating that the amount in controversy is "calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested .") (quoting Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir. 1972)) (internal quotations omitted).

[7]   The Younger abstention doctrine is named after the suit Younger v. Harris, 401 U.S. 37 (1971).

> [u]nder the doctrine of Younger abstention, federal courts are prevented from enjoining pending state proceedings absent extraordinary circumstances. There are three requirements which must be met before a federal court may properly invoke Younger abstention: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.

287 Fed.Appx. at 157. Here, Plaintiffs expressly allege that the New Jersey property is in foreclosure. Moreover, as Plaintiffs have abandoned their TILA claim, there is no longer a federal claim asserted by Plaintiffs. Even if a federal claim were being asserted, Plaintiffs could raise such a claim in New Jersey state court. Finally, determinations relating to the title of New Jersey real property implicate that state's important interests. In this sort of circumstance, New Jersey district courts have not hesitated to find Younger abstention applicable. See e.g., In re Ferreri, No. 11-565, 2011 WL 691585, *2 (D.N.J. Feb. 15, 2011); Kushner v. Wachovia Bank, N.A., No. 10-5488, 2010 WL 5094551, *2 (D.N.J. Dec. 8, 2010).[8] I likewise find Younger abstention applicable here, and dismiss Plaintiffs' suit.

10. Because I do not reach the merits, I make no ruling as to whether Plaintiffs may bring their challenges in the context of the pending foreclosure proceeding or whether Plaintiff may file their claims (again) in state court. In this connection, the

---

[8] The parties have not updated the Court on the status of the foreclosure proceeding. If that proceeding has concluded, the Court would lack jurisdiction over this matter under the Rooker-Feldman doctrine in light of Plaintiffs' request for rescission. See generally Patetta v. Wells Fargo Bank, NA, No. 09–2848, 2010 WL 1931256, *8 (D.N.J. May 13, 2010) (explaining applicability of Rooker-Feldman to foreclosure-related proceedings).

Court notes that, for future reference, Defendant Real Time Resolutions, Inc. should consider the applicability of <u>Younger</u> and other abstention doctrines prior to removing state court actions relating to foreclosures.

Dated: May 23, 2012

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.
